THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WAYNE RUFF, Defendant—(Lena Josephine Ruff, Defendant-Appellant).

Fourth District   No. 4—82—0694

Opinion filed June 23, 1983.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and

Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Following a jury trial, defendant was convicted of one count of unlawful possession of cannabis and two counts of unlawful possession of a controlled substance (cocaine and methaqualone), violations of section 4(e) of the Cannabis Control Act and section 402 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, pars. 704(e), 1402). She was sentenced to concurrent terms of two years' probation for each offense. The trial court also fined her $500. It is the trial court's imposition of a fine which defendant challenges on appeal. We affirm.

Because defendant does not contest the validity of her convictions, a brief recitation of the facts will suffice.

On May 3, 1982, the police executed a search warrant to an apartment rented by defendant and her husband, Wayne Ruff. Seized during the search were 17.22 pounds of cannabis, 3.1 grams of cocaine, 62 capsules of methaqualone, and a box containing $9,500 in United States currency.

As a result of the search, both defendant and her husband were charged with unlawful possession of cannabis with intent to deliver, unlawful possession of cannabis, and two counts of unlawful possession of a controlled substance. Defendant's husband, Wayne, was also charged with unlawful use of weapons, possession of a weapon without a firearm's owner identification card, reckless conduct, and armed violence. These additional charges stem from Wayne's having fired a pistol at police officers when they attempted to execute the warrant.

Defendant, at her trial, sought to prove that it was Wayne who was the active participant in the crimes. Both husband and wife testified that although defendant was aware that Wayne had been storing contraband in their home, she disapproved of the practice and had threatened to leave him over his involvement with drugs. The jury, however, convicted defendant on all counts except that charging her with unlawful possession of cannabis with intent to deliver. After defendant's trial, Wayne entered a negotiated plea of guilty to charges of unlawful possession of cannabis with intent to deliver, two counts of unlawful possession of a controlled substance, and reckless conduct. The remaining charges against him were dismissed.

At a joint sentencing hearing, evidence was presented which established that the street value of the drugs seized from the apartment

was $7,718. Relying upon section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—1.1), the prosecutor recommended that a "total fine" of $7,718 be assessed against the Ruffs. Defendant was assessed the $500 fine in addition to her sentence of probation. Wayne Ruff was sentenced to the Department of Corrections and was fined $7,218. The court also ordered that the $9,500 seized with the contraband be forfeited to the county.

Before addressing defendant's arguments, we note that the fine assessed against defendant is substantially less than that mandated by section 5—9—1.1. That provisions provides:

"When a person has been adjudged guilty of a drug related offense involving possession or delivery of cannabis or possession or delivery of a controlled substance as defined in the Cannabis Control Act, as amended, in addition to any other penalty imposed, a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized.

'Street value' shall be determined by the court on the basis of testimony of law enforcement personnel and the defendant as to the amount seized and such testimony as may be required by the court as to the current street value of the cannabis or controlled substance seized." Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—1.1.

The trial court in this case apportioned the fines against defendant and her husband so that the sum of the fines imposed equaled the street value of the drugs seized from both of them. Section 5—9—1.1, however, does not authorize an apportionment of fines between codefendants. It provides in no uncertain terms that a person convicted of possessing or delivering cannabis or a controlled substance shall be assessed a fine equal to the street value of the contraband seized. Defendant was convicted of unlawful possession of cannabis and two counts of unlawful possession of a controlled substance. The street value of the drugs seized from her home was $7,718. Accordingly, application of section 5—9—1.1 required the imposition of a $7,718 fine.

■ The trial court when imposing sentence stated:

"I recognize that I could sentence her to pay the total fine and revoke part of it. I am not going to do that. I am going to sentence her to pay that much of a fine."

The court was apparently referring to its powers to revoke the fine pursuant to section 5—9—2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—2.) That section provides:

"Revocation of a Fine. The court, upon good cause shown, may revoke the fine or the unpaid portion or may modify the

method of payment."

Although the court may revoke a fine or the unpaid portion of a fine already imposed, we do not believe that it may reduce a mandatory fine not yet levied. The court therefore erred when it imposed a fine in an amount less than the full street value of the cannabis and controlled substances seized.

However, the court's apportionment of the fines is consistent with the prosecutor's recommendation at the sentencing hearing that a "total fine of $7,718" be assessed against defendant and her husband. The People do not complain on appeal that defendant was fined too little; instead they urge an affirmance of the fine assessed. Following general principles of estoppel and waiver, we will therefore review defendant's allegations of error as if the amount of the fine had properly been imposed.

■ Defendant complains that the fine against her must be vacated because section 5—9—1.1 infringes upon the court's discretionary sentencing powers and provides no rational basis for calculating the amount of fine to be assessed. Although failing to invoke any specific constitutional prohibition, defendant impliedly argues that the statute offends due process.

The People respond that the issue has been waived by virtue of defendant's failure to raise this argument below. (See *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.) The record, however, reflects that counsel for defendant's husband challenged the constitutionality of section 5—9—1.1 at the joint sentencing hearing. Accordingly, we will address the issue.

It is a settled rule of law that the legislature has the authority to set the nature and extent of penalties. (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 416 N.E.2d 259.) The standard of the proper exercise of this power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public. *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.

The legislature has, by statute, made clear its intention to subject drug offenders to sharply increasing penalties based upon the amount of drugs involved. (See Ill. Rev. Stat. 1981, ch. 56½, pars. 701, 1100.) The mandatory fine provision of section 5—9—1.1 provides a rational framework in which the punishment imposed is based upon the value and hence volume of drugs seized from the offender. Although it is true that the legislature has chosen to divest the trial judge of the exercise of a certain amount of discretion in the levying of fines, the street value of the drugs seized represents only the minimum fine

which may be imposed. This is not unlike the fixing of minimum mandatory prison sentences for the commission of certain serious criminal offenses. Such a practice is unquestionably within the proper domain of the legislature. *People v. Moore* (1973), 15 Ill. App. 3d 691, 304 N.E.2d 696; *People v. Estes* (1976), 37 Ill. App. 3d 889, 346 N.E.2d 469.

■ Defendant also complains that a mandatory fine ignores consideration of an offender's financial resources. She urges that section 5—9—1.1 should be read in conjunction with section 5—9—1(d)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—1(d)(1)) which requires the court to consider the financial resources and future ability of the offender to pay the fine. Defendant contends that the trial court erred when it imposed the $500 fine without first considering her ability to pay it.

However, it is apparent from the trial court's comment concerning its authority to revoke the fine that it was concerned with defendant's financial resources. In addition, a trial judge need not specifically state that the defendant was determined to have financial resources and ability to pay; that finding is implicit in the imposition of a fine where the judge is aware of the facts which support such a determination. *People v. Bishop* (1980), 81 Ill. App. 3d 521, 401 N.E.2d 648.

■ Moreover, we conclude that the provisions of section 5—9—1 have no bearing upon a fine imposed pursuant to section 5—9—1.1. A fine assessed pursuant to the latter is to be levied "in addition to any other penalty imposed." Unlike section 5—9—1, section 5—9—1.1 contains no provision requiring an examination into an offender's personal situation. It calls for the mandatory imposition of a fine. Accordingly, a defendant's financial resources and ability to pay are irrelevant considerations when imposing a fine pursuant to section 5—9—1.1.

Although it is true that fines are not favored in cases where the defendant does not have the ability to pay (see *People v. Oravis* (1980), 81 Ill. App. 3d 717, 402 N.E.2d 297), safeguards exist for those who in good faith are unable to pay a fine. In addition to the provisions of section 5—9—2, already discussed, section 5—9—3(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—3(c)), provides that when an offender unintentionally defaults in the payment of a fine, the court may allow him additional time for payment, reduce the amount to be paid, or revoke the fine or unpaid balance. Section 5—6—4(d) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—4(d)) prohibits the revocation of a defendant's probation for

696

failure to pay a fine unless the failure is due to the offenders' wilful refusal to pay. Thus, we are not inclined to vacate defendant's fine even if uncertainty exists as to her ability to pay it.

■ For all the foregoing reasons, we conclude that section 5—9—1.1 of the Unified Code of Corrections is constitutionally sound. The trial court was not required to examine defendant's financial resources—a fine levied under section 5—9—1.1 is mandatory. Although the $500 fine is less than that required by statute, the amount of fine assessed by the trial court has not been contested by the People. Accordingly, the judgment of the circuit court of Macon County is affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.